In the United States District Court
for the Northern District of Illinois
Eastern Division

| | |
|---|---|
| Paul Rodino, | |
| *On behalf of himself and others similarly situated*, | Case No. |
| Plaintiff, | Judge |
| v. | Magistrate Judge |
| NRJM, Inc. and Ray Montez, | Jury Demand Endorsed Hereon |
| Defendants. | |

Class and Collective Action Complaint

1.      Paul Rodino, on behalf of himself and all similarly-situated individuals, brings this action against Defendants NRJM, Inc. and Ray Montez. Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq*. ("IWPCA").

2.      NJRM, Inc. and Ray Montez own and operate Domino's franchisees.

3.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, the IMWL, and the IWPCA, by improperly taking a tip credit from the wages of delivery drivers, and by failing to adequately reimburse delivery drivers for their delivery-related expenses, and thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked.

4.      Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, the IMWL, and the IWPCA.

5.      All delivery drivers at NJRM, Inc., including Plaintiff, have been subject to the same employment policies and practices, including policies and practices with respect to wages, reimbursement for out-of-pocket expenses, and wage deductions.

6.      Plaintiff brings this action on behalf of herself and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

7.      Plaintiff also brings this action on behalf of herself and similarly situated current and former delivery drivers in Illinois, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of the IMWL and the IWPCA.

## JURISDICTION AND VENUE

8.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

9.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Illinois law claims.

10.     Venue in this Court is proper under 28 U.S.C. § 1391(b) because the parties reside in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

## PARTIES

**Plaintiff**

**Paul Rodino**

11.     Plaintiff Paul Rodino resides in the Northern District of Illinois. Further, at all times material herein, Plaintiff worked within the boundaries of Northern District of Illinois.

12.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA, the IMWL and the IWPCA.

13.     Plaintiff has given written consent to join this action, a copy of which is attached to this Class Action Complaint.

**Defendants**

**NJRM, Inc.**

14.     Defendant NJRM, Inc. is a domestic corporation registered to do business in Illinois.

15.     Ray Montez is the owner of NJRM, Inc.

16.     NJRM, Inc. is the corporate entity that appears on Plaintiff's paystubs for work he completed for Defendants.

17.     NJRM, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

18.     NJRM, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

19.     At all relevant times, NJRM, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

20.     NJRM, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA, the IMWL, and the IWPCA.

21.     At all relevant times, NJRM, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

22.     NJRM, Inc.'s gross revenue exceeds $500,000 per year.

**Ray Montez**

23.     Defendant Ray Montez is the president of NJRM, Inc.

24.     Ray Montez is the founder of NJRM, Inc.

25.     Ray Montez is the owner of NJRM, Inc.

26.     Ray Montez is individually liable to delivery drivers at the NJRM Domino's restaurants under the definitions of "employer" set forth in the FLSA, the IMWL, and the IWPCA because he owns and operates NJRM, Inc., ultimately controls significant aspects of the NJRM, Inc.'s day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

27.     Ray Montez has had conversations with Plaintiff about his hourly compensation, and decided that Plaintiff would not be receiving a raise.

28.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had financial control over the operations at the NJRM Domino's restaurants.

29.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has a role in significant aspects of the NJRM Domino's restaurants' day to day operations.

30.     At all relevant times, by virtue of his role owner and operator of NJRM, Inc., Ray Montez has had control over the NJRM Domino's restaurants' pay policies.

4

31.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had power over personnel and payroll decisions at the NJRM Domino's restaurants, including but not limited to influence of delivery driver pay.

32.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had the power to hire, fire and discipline employees, including Plaintiff and other delivery drivers at the NJRM Domino's restaurants.

33.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had the power to stop any illegal pay practices that harmed Plaintiff and similarly situated employees.

34.     At all times relevant, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had the power to transfer the assets and liabilities of NJRM, Inc.

35.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had the power to declare bankruptcy on behalf of NJRM, Inc.

36.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had the power to enter into contracts on behalf of NJRM, Inc.

37.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez has had the power to close, shut down, and/or sell each of the NJRM Domino's restaurants.

38.     At all relevant times, by virtue of his role as owner and operator of NJRM, Inc., Ray Montez had authority over the overall direction of NJRM, Inc. and was ultimately responsible for its operations.

39.     NJRM, Inc. functions for Ray Montez's profit.

5

40.     Ray Montez has influence over how the NJRM Domino's restaurants can run more profitably and efficiently.

## FACTS

### CLASSWIDE FACTUAL ALLEGATIONS

41.     During all relevant times, Defendants have operated Domino's Pizza restaurants in the state of Illinois (the "NJRM Domino's restaurants").

42.     The primary function of the NJRM Domino's restaurants is to sell pizza and other food items to customers, whether they carry out or have their food delivered.

43.     Each of the NJRM Domino's restaurants employs delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

44.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers employed by the NJRM Domino's restaurants.

45.     All delivery drivers employed by the NJRM Domino's restaurants over the last ten years have had essentially the same job duties—deliver pizza and other food items to customers.

46.     When there are no deliveries to make, the delivery drivers are required to work inside the NJRM Domino's restaurants building pizza boxes, cleaning, preparing pizza and other food items, taking orders, and completing other duties inside the restaurant as necessary.

47.     Throughout his employment, Plaintiff and similarly situated delivery drivers were paid minimum wage minus a tip credit for the hours they spent working outside the restaurant completing deliveries.

48.     Throughout his employment, Plaintiff and similarly situated delivery drivers have been paid minimum wage for the hours they worked inside the restaurants.

49.     Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering the Defendants' pizza and other food items.

50.     Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, automobile financing, insurance, and other equipment necessary for delivery drivers to complete their job duties.

51.     Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, and incurred cell phone and data charges all for the primary benefit of Defendants.

52.     At all relevant times, Plaintiff and other similarly situated delivery drivers at the NJRM Domino's restaurants were reimbursed a flat per delivery amount.

53.     Defendants did not reimburse delivery drivers at the NJRM Domino's restaurants at the IRS standard business mileage rate.

54.     Defendants did not reimburse delivery drivers at the NJRM Domino's restaurants for their actual expenses.

55.     Defendants did not track the actual expenses of the delivery drivers at the NJRM Domino's restaurants.

56.     Defendants did not reimburse delivery drivers at the NJRM Domino's restaurants based on a reasonable approximation of their expenses.

57.     At all relevant times, Defendants have failed to pay Plaintiff and similarly situated delivery drivers the legally required minimum wage and overtime wages because they failed to adequately reimburse them for their automobile expenses or other job-related expenses.

58.     Plaintiff and similarly situated delivery drivers typically average approximately four to five miles per round-trip delivery.

59.     Plaintiff and similarly situated delivery drivers typically make approximately 3 deliveries per hour.

60.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

      a.  2008: 58.5 cents/mile (July-December)
      b.  2009: 55 cents/mile
      c.  2010: 50 cents/mile
      d.  2011: 51.5 cents/mile (January-June); 55.5 cents/mile (July-December)
      e.  2012: 55.5 cents/mile
      f.  2013: 56.5 cents/mile
      g.  2014: 56 cents/mile
      h.  2015: 57.5 cents/mile
      i.  2016: 54 cents/mile
      j.  2017: 53.5 cents/mile
      k.  2018: 54.5 cents/mile

61.     Plaintiff and similarly situated delivery drivers at the NJRM Domino's restaurants also had deductions taken from their wages as contributions to the Domino's Partners Foundation.

62.     The Partners Foundation deduction taken from Plaintiff and similarly situated delivery drivers' wages was for the benefit of Defendants.

63.     The Partners Foundation allows Defendants to offer an employee benefit to all Domino's employees in times of financial hardship, including on-the-job accidents, medical emergencies, fires or natural disasters, or the death of an immediate family member. All Domino's employees, even those who do not contribute to the Foundation, can apply for benefits.

64.     The Partners Foundation is operated out of Domino's headquarters at 30 Frank Lloyd Drive, Ann Arbor, Michigan 48106-0997. https://biz.dominos.com/web/public/about-dominos/team-member-support

8

65. The Domino's Partners Foundation deduction was taken from Plaintiff's and similarly situated employees' wages and explained that all of the employees paid into the Foundation.

66. As a result of the automobile and other job-related expenses and deductions incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wage and overtime wages guaranteed to them by the FLSA and Illinois law.

67. Plaintiff and other similarly situated delivery drivers had deductions taken from their wages for the cost of uniforms.

68. The deductions taken from the wages of Plaintiff and other similarly situated delivery drivers resulted in their wages falling below minimum wage.

69. At all relevant times, Defendants apply the same pay policies, practices, and procedures to all delivery drivers at the NJRM Domino's restaurants.

70. Defendants' delivery drivers had similar experiences to those of Plaintiff. They were paid at or close to minimum wage as an hourly rate; were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; and completed deliveries of similar distances and at similar frequencies.

71. Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendants' reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

72. Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred

unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations.

73.     Plaintiff and similarly situated delivery drivers are regularly clocked out onto their lower, "delivery pay rate" before they leave for deliveries. Because Defendants' managers receive additional compensation if the PULSE system reflects that a delivery has been completed within a certain amount of time, they routinely clocked delivery drivers out as if they were on their delivery before the pizza was actually ready to go out. As a result, delivery drivers regularly spent 5-10 minutes working inside the restaurant but being a tipped wage rate.

74.     Defendants have willfully failed to pay federal and Illinois state minimum wage and overtime to Plaintiff and similarly situated delivery drivers at the NJRM Domino's restaurants.

## PLAINTIFF'S INDIVIDUAL FACTUAL ALLEGATIONS

75.     Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiff, individually, as follows:

76.     Plaintiff worked as a delivery driver for one of Defendants' NJRM Domino's restaurants from approximately October, 2014 to present.

77.     At the NJRM Domino's restaurants, Plaintiff's job duties included delivering pizzas and other food items to customers at their homes and workplaces, and completing various tasks inside the store.

78.     Defendants required Plaintiff to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering pizza.

79.     Plaintiff was required to purchase gasoline, oil and other fluids, vehicle parts, auto repair and maintenance parts and services, automobile financing, and auto insurance for the benefit of Defendants.

10

80.     Plaintiff's car depreciated in value as a result of the work he completed for Defendants.

81.     Defendants did not reimburse Plaintiff at the IRS standard business mileage rate for the miles he drove completing deliveries for Defendants.

82.     Defendants never attempted to track of Plaintiff's actual expenses in order to make deliveries on their behalf.

83.     Defendants never required Plaintiff to record or report the expenditures she made for her car, gasoline, and/or for other job-related expenses.

84.     Plaintiff is paid $5.10 per hour for all hours worked while completing deliveries.

85.     Plaintiff is paid minimum wage for all hours worked inside the restaurant.

86.     Plaintiff received a flat delivery reimbursement amount for each delivery he completed no matter how many miles he drove.

87.     Plaintiff delivered approximately 3 orders per hour.

88.     Plaintiff drove approximately 4 to 5 miles per delivery.

89.     Plaintiff has been reimbursed $1.15 per delivery at certain times during his employment.

90.     Plaintiff has been reimbursed $1.30 per delivery at certain times during his employment.

91.     Plaintiff has been reimbursed $1.45 per delivery at certain times during his employment.

92.     Thus, in 2016, for example, Defendants' average effective reimbursement rate for Plaintiff was approximately $.29 per mile ($1.30 per delivery / 4.5 average miles per delivery).

93.     In 2016, the IRS business mileage reimbursement has been $.54 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using that IRS rate as a reasonable approximation of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.25 ($.54 - $.29) per mile. Considering Plaintiff's estimate of about 4.5 average miles per delivery, Defendants under-reimbursed him about $1.125 per delivery ($.25 x 4.5 average miles).

94.     Thus, Plaintiff consistently "kicked back" to Defendants approximately $3.375 per hour ($1.125 per delivery x 3 deliveries per hour).

95.     Plaintiff also had deductions taken from his wages to pay for the costs of uniforms.

96.     Plaintiff's uniform was worn for the benefit of Defendants.

97.     Plaintiff did not authorize the uniform deduction from his wages.

98.     Plaintiff was clocked out onto his delivery rate before he actually left for deliveries and while he worked inside the restaurant in a non-tipped capacity. This regularly happened because Defendants' managers made more money if the PULSE system reflected that the deliveries were completed within 30 minutes. This happens up to 50 times per week, for usually between 30 seconds and 10 minutes each time.

99.     On rare occasions, Plaintiff returned from deliveries less than 5 minutes after he left. On those occasions, because of the way PULSE is set up, Plaintiff could not yet clock in, because the system did not recognize that he could have returned that quickly. This resulted in delays in being able to clock back in.

**COLLECTIVE ACTION ALLEGATIONS**

12

100. Plaintiff brings the First and Second Count on behalf of the following collective under the FLSA:

> All current and former delivery drivers employed at the Domino's Pizza restaurants owned, operated, and controlled by NJRM, Inc. nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action.

101. At all relevant times, Plaintiff and the FLSA Collectives have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collectives minimum wage for all hours worked. Plaintiff's claims are essentially the same as those of the FLSA Collectives.

102. Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiff and the FLSA Collectives.

103. Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked.

104. Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

105. Defendants are aware or should have been aware that federal law required them to pay non-exempt employees at time and one half their regular hourly rate for hours worked over 40 per workweek.

106. Defendants are aware or should have been aware that federal law prohibited them from taking "kickbacks" from the wages of delivery drivers.

107. Defendants' unlawful conduct has been widespread, repeated, and consistent.

108.    The First and Second Counts are properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

109.    The FLSA Collective members are readily identifiable and ascertainable.

110.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

111.    Plaintiff brings the Third, Fourth, Fifth, and Sixth Counts under Federal Rule of Civil Procedure 23, on behalf of herself and a class of persons consisting of:

> All current and former delivery drivers employed at the Domino's Pizza restaurants owned, operated, and controlled by NJRM, Inc. in Illinois, during the ten years prior to the filing of this Class Action Complaint and the date of final judgment in this matter.

112.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

113.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

114. The Rule 23 Class members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

115. There are more than 50 Rule 23 Class members in the Rule 23 Class.

116. Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

117. Plaintiff and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, taking "kickbacks" from wages, and failing to reimburse for expenses.

118. Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the IMWL and the IWPCA.

119. Plaintiff and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected all Rule 23 Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

120. Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

121. By seeking to represent the interests of the Rule 23 Class members, Plaintiff is exercising and intends to exercise his right to engage in concerted activity for the mutual aid or benefit of herself and his co-workers.

122. Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

123.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

124.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

125.    Upon information and belief, Defendants and other employers throughout the state violate the IMWL and IWPCA.  Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation.  Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

126.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

127.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

> a.    Whether Defendants paid Plaintiff and the Rule 23 Class members at the proper minimum wage rate for all hours worked;
>
> b.    Whether Plaintiff and the Rule 23 Class members were required to drive their own cars for work;

16

c. Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate or their actual expenses (with recordkeeping);

d. Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiff and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

e. Whether Defendants took deductions from the wages of Plaintiff and the Rule 23 Class members for the cost of Domino's uniforms;

f. Whether Defendants took impermissible "kickbacks" from the wages of Plaintiff and the Rule 23 Class Members;

g. Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by the IWPCA;

h. Whether Defendants' policy of failing to pay Plaintiff and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

i. The nature and extent of class-wide injury and the measure of damages for those injuries.

128. In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

129. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

130. Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

131.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses.

132.    Defendants took deductions from the wages of Plaintiff and the FLSA Collective causing their wages to fall below minimum wages.

133.    Defendants took unlawful kickbacks from the wages of Plaintiff and the FLSA Collective for contributions to the Domino's Partners Foundation.

134.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collectives.

135.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

136.    As a result of Defendants' violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

<u>**Count 2**</u>
**Failure to Pay Overtime Wages—Fair Labor Standards Act**
**(On Behalf of Plaintiff and the FLSA Collective)**

137.    Plaintiff restates and incorporates the following allegations as if fully rewritten herein.

138.    Plaintiff and the FLSA Collective worked more than forty hours in one or more workweeks.

139.    Because Defendants required Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay

Plaintiffs and the FLSA collective at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

140.     Defendants paid Plaintiff at the wrong overtime rate.

141.     By not paying Plaintiff and the FLSA collective proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have willfully violated the FLSA.

142.     As a result of Defendants' willful violations, Plaintiff and the FLSA collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorney's fees.

**Count 3**
**Failure to Pay Minimum Wages – Illinois Minimum Wage Law**
**(On Behalf of Plaintiff and the Rule 23 Class)**

143.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

144.     Defendants paid Plaintiff and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses, by taking illegal "kickbacks" from their wages, and by pay them a tipped wage rate while they worked in a non-tipped capacity.

145.     Defendants took illegal "kickbacks" by requiring Plaintiff and the Rule 23 Class members to contribute to the Domino's Partners Foundation.

146.     Defendants took illegal deductions from the wages of Plaintiff and the Rule 23 Class members to cover the cost of uniforms.

147.     Because Defendants required Plaintiff and the Rule 23 Classes to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Rule 23 Class minimum wage.

19

148. Because Defendants took deductions from the wages of the Plaintiff and the Rule 23 Classes for their benefit, Defendants failed to pay Plaintiff and the Rule 23 Class minimum wage.

149. By not paying Plaintiff and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the IMWL.

150. As a result of Defendants' violations, Plaintiff and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, unlawful deductions, statutory damages as defined by 820 ILCS 105/12(a), costs, and attorneys' fees.

**<u>Count 4</u>**
**Violation of IMWL – Unpaid Overtime Wages**
**(On Behalf of Plaintiff and the Rule 23 Class)**

151. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

152. Plaintiff and the Rule 23 Class worked more than forty hours in one or more workweeks.

153. Because they required Plaintiff and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants did not pay Plaintiffs and the Rule 23 Class at least one and a half times their normal hourly rate for time worked in excess of forty hours per workweek.

154. By not paying Plaintiffs and the Rule 23 Class proper overtime wages for time worked in excess of forty hours in a workweek, Defendants have violated the Ill. Stat. § 105/4a.

155. As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid overtime wages, unreimbursed expenses, statutory damages as defined by 820 ILCS 105/12(a), costs, and attorneys' fees.

**Count 5**
**Violation of the IWPCA – Unpaid Wages**
**(On Behalf of Plaintiff and the Rule 23 Class)**

156.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

157.    This Count arises from Defendants' practice of failing to pay Plaintiff and the Rule 23 Class at the wage rate agreed to by the parties.

158.    During the course of her employment with NJRM, Inc., Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

159.    Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

160.    Defendants had a practice of not paying Plaintiff and the Rule 23 Classes at the rate agreed to by the parties. For example, Defendants took "kickbacks" from the wages of Plaintiff and the Rule 23 Class, and failed to properly reimburse Plaintiff and the Rule 23 Classes for the expenses they incurred while making deliveries on Defendants' behalf.

161.    Defendants also took unlawful deductions from the wages of Plaintiff and the Rule 23 Class for the cost of uniforms.

162.    Plaintiff and the Rule 23 Classes were entitled to be paid for all time worked at the rate agreed to by the parties.

163.    Defendants' practice of failing to pay Plaintiff and the Rule 23 Classes at the rate agreed to by the parties violated the IWPCA.

164.    Plaintiff and the Rule 23 Class are entitled to recover all the unpaid wages in violation of the IWPCA made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

165.     As a result of Defendants' violations of the IWPCA, Plaintiff and the Rule 23 Class, are entitled to unpaid wages, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

**Count 6**
**Violation of the IWPCA – Unlawful Deductions**
**(On Behalf of Plaintiff and the Rule 23 Class)**

166.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

167.     This Count arises from Defendants' practice of making unlawful deductions from the wages of Plaintiff and the Rule 23 Class.

168.     During the course of his employment, Plaintiff had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

169.     Other similarly situated employees likewise had an agreement within the meaning of the IWPCA to be compensated for all hours worked at an agreed upon rate.

170.     Defendants had a practice of making unlawful deductions from Plaintiff's earned wages without authorization from Plaintiff in writing as required by the IWPCA. Such deductions: (a) were not required by law; (b) were not to Plaintiff's benefit; (c) were not in response to a valid wage assignment or wage deduction order; and (d) were not made with the express written consent of Plaintiff, given freely at the time the deductions were made.

171.     Defendants likewise had a practice of making unlawful deductions from members of the Rule 23 Classes without their authorization.

172.     Defendants' practice of making unlawful deductions from the earned wages of Plaintiff and the Rule 23 Classes violated the IWPCA.

22

173. Plaintiff and the Rule 23 Classes are entitled to recover all the unlawful deductions made from their earned wages for a period of ten (10) years prior to the filing of this lawsuit. *See* 73 ILCS 5/13-206.

174. As a result of Defendants' violations of the IWPCA, Plaintiff and the Rule 23 Class, are entitled to unpaid wages and unlawful deductions, statutory damages provided under the IWPCA, reasonable attorneys' fees, and costs.

**WHEREFORE**, Plaintiff Paul Rodino prays for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, unlawful deductions and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D. Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel;

E. A declaratory judgment that the practices complained of herein are unlawful under the IMWL and the IWPCA.

F. An award of unpaid minimum wages, unreimbursed expenses, and unlawful deductions due under the IMWL and IWPCA.

G. Statutory damages under the IMWL.

23

H.      Statutory damages under the IWPCA.

I.      An award of prejudgment and post-judgment interest.

J.      An award of costs and expenses of this action, together with reasonable attorneys'

fees and expert fees.

K.      Such other legal and equitable relief as the Court deems appropriate.


                        Respectfully submitted,

                         /s/ Michael Fradin_____
                        Michael Fradin (6289502)
                        Michael L. Fradin, Attorney at Law
                        8401 Crawford Ave. Ste. 104
                        Skokie, IL 60076
                        Phone: 847-644-3425
                        Fax: 847-673-1228
                        (*mike@fradinlaw.com*)

                        Andrew Biller (Lead Counsel)
                        (*pro hac vice forthcoming*)
                        Andrew Kimble
                        (*pro hac vice forthcoming*)
                        Markovits, Stock & DeMarco, LLC
                        3825 Edwards Road, Suite 650
                        513-651-3700 (Phone)
                        513-665-0219 (Fax)
                        (*abiller@msdlegal.com*)
                        (*akimble@msdlegal.com*)
                        www.msdlegal.com

                        Aaron Maduff
                        Maduff & Maduff, LLC
                        205 N. Michigan Ave., Suite 2050
                        Chicago, IL 60601
                        (*abmaduff@madufflaw.com*)

                        *Counsel for Plaintiffs and the putative class*

## **JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all

issues herein triable to a jury.

       _/s/ Michael Fradin_____

       Michael Fradin